The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No.  No. 3:17-cv-5257-RJB |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **CONSENT DECREE** |
| | ) | |
| MANKE LUMBER COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

i

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE ..................................................................................2

II. APPLICABILITY ...................................................................................................3

III. OBJECTIVES .......................................................................................................4

IV. DEFINITIONS.......................................................................................................4

V. CIVIL PENALTY ...................................................................................................8

VI. COMPLIANCE REQUIREMENTS.......................................................................9

   A. Environmental Manager and Engineering Consulting Firm ....................10

   B. Stormwater Compliance Requirements ...................................................14

   C. EMS and Multimedia Environmental Audits ..........................................26

   D. Additional Training...................................................................................32

VII. SUPPLEMENTAL ENVIRONMENTAL PROJECT ........................................32

VIII. REPORTING REQUIREMENTS........................................................................36

IX. STIPULATED PENALTIES ...............................................................................38

X. FORCE MAJEURE .............................................................................................45

XI. DISPUTE RESOLUTION ...................................................................................47

XII. INFORMATION COLLECTION AND RETENTION .......................................50

XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS.............................52

XIV. COSTS .................................................................................................................53

XV. NOTICES.............................................................................................................53

XVI. EFFECTIVE DATE .............................................................................................55

XVII. RETENTION OF JURISDICTION .....................................................................56

XVIII. MODIFICATION ................................................................................................56

XIX. TERMINATION...................................................................................................56

XX. PUBLIC PARTICIPATION ................................................................................57

XXI. SIGNATORIES/SERVICE..................................................................................58

XXII. INTEGRATION ..................................................................................................58

XXIII. FINAL JUDGMENT ...........................................................................................58

XXIV. APPENDICES .....................................................................................................59

XXV. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION ..............................59

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1

Whereas, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action on April 6, 2017, alleging that Defendant, Manke Lumber Company, Inc. ("Manke" or "Defendant"), violated Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311; the conditions and limitations of the Industrial Stormwater General Permit ("General Permit") issued to Defendant by the Washington Department of Ecology ("Ecology") under Section 402(a) of the CWA, 33 U.S.C. § 1342(a); and the Spill Prevention, Control, and Countermeasure ("SPCC") regulations promulgated by EPA pursuant to Section 311(j) of the CWA, 33 U.S.C. § 1321(j). These violations occurred at Defendant's wood products facility at 1717 Marine View Drive in Tacoma, Washington ("Facility").

Whereas, Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

Whereas, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.   JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; and Sections 309(b), 311(b)(7)(E), and 311(n) of the CWA; 33 U.S.C. §§ 1319(b), 1321(b)(7)(E), and 1321(n); and under 28 U.S.C. §§ 1331, 1345, and 1355, and over

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

2

1    the Parties.  Venue lies in this District pursuant to Sections 309(b) and 311(b)(7)(E) of the CWA,

2    33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); and pursuant to 28 U.S.C. §§ 1391(b) and (c) and

3    1395(a), because Defendant is located, resides, and is doing business in this judicial district and a

4    substantial part of the events giving rise to the claims alleged occurred within this District. For

5    purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's

6    jurisdiction over this Decree and any such action and over Defendant and consents to venue in

7    this judicial district.

8        2.       For purposes of this Consent Decree, Defendant agrees that the Complaint states

9    claims upon which relief may be granted pursuant to Sections 309(b) and 311(e)(2) of the CWA,

10   33 U.S.C. §§ 1319(b) and 1321(e)(2), and a civil penalty may be awarded pursuant to Sections

11   309(d) and 311(b)(7)(C) of the CWA, 33 U.S.C. §§ 1319(d) and 1321(b)(7)(C).

## II.   APPLICABILITY

13       3.       The obligations of this Consent Decree apply to and are binding upon the United

14   States, and upon Defendant and any successors, assigns, or other entities or persons otherwise

15   bound by law.

16       4.       No transfer of ownership or operation of the Facility, whether in compliance with the

17   procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that

18   the terms of the Decree are implemented.  At least thirty (30) Days prior to such transfer,

19   Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall

20   simultaneously provide written notice of the prospective transfer, together with a copy of the

21   proposed written agreement, to EPA Region 10, the United States Attorney for the Western

22   District of Washington, and the United States Department of Justice, in accordance with Section

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

XV (Notices) below.  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor or Engineering Consultant retained to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree. Defendant retains any rights it may have against such officers, directors, employees, agents, or contractors.

### III.   OBJECTIVES

7.      The objective of this Consent Decree is for Defendant to achieve and maintain compliance with Sections 301 of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1311; the conditions and limitations of the General Permit issued to Defendant by Ecology under Section 402(a) of the CWA, 33 U.S.C. § 1342(a); and the Spill Prevention, Control, and Countermeasure regulations promulgated by EPA pursuant to Section 311(j) of the CWA, 33 U.S.C. § 1321(j) at Defendant's Facility.

### IV.   DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1     a.    "Benchmark" shall mean a pollutant concentration used as a permit threshold,

2     below which a pollutant is considered unlikely to cause a water quality violation, and above

3     which it may.  In accordance with Defendant's General Permit No. WAR000325, Benchmark

4     values are not water quality standards and are not numeric effluent limitations; they are indicator

5     values;

6     b.    "Benchmark Exceedance" shall mean surpassing the pollutant Benchmark

7     concentration identified in the General Permit WAR000325;

8     c.    "Calendar Quarter" shall mean a three (3) consecutive Month period, where the

9     first quarter begins in January, the second quarter begins in April, the third quarter begins in

10    July, and the fourth quarter begins in October;

11    d.    "Complaint" shall mean the complaint filed by the United States in this action;

12    e.    "Conceptual Design" shall mean an approximate 0-5% submittal including a

13    narrative statement of project goals, basic description of the components expected to make up

14    each element, basic design criteria, project requirements, and an elementary system diagram

15    showing the major elements comprising the system (in block format); Schematic or preliminary

16    drawings or specifications are assumed to be prepared at the conceptual stage.  Items requiring

17    further assessment shall be stated where they apply;

18    f.    "Consent Decree" or "Decree" shall mean this Decree and all Appendices

19    attached hereto (listed in Section XXIV);

20    g.    "Date of Lodging" shall mean the date that this Consent Decree is lodged with the

21    Court;

22    h.    "Day" shall mean a calendar day unless expressly stated to be a business day.  In

23    computing any period of time under this Consent Decree, where the last day would fall on a

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

5

Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next

business day;

       i.    "Defendant" shall mean Manke Lumber Company, Inc.;

       j.    "EPA" shall mean the United States Environmental Protection Agency and any of

its successor departments or agencies;

       k.    "Effective Date" shall have the definition provided in Section XVI;

       l.    "Environmental Management System ("EMS")" shall mean the integrated system

created for Defendant by the EMS Consultant to standardize and formalize practices and

programs used to maintain, track, and improve environmental performance in accordance with

all requirements set forth in Paragraph 42.;

       m.    "EMS Manual" shall mean the document approved by EPA on October 3, 2018,

and all subsequent amendments thereto, that describes and documents the EMS developed by the

EMS Consultant for the Defendant;

       n.    "Facility" shall mean Defendant's wood products facility located at 1717 Marine

View Drive in Tacoma, Washington;

       o.    "Final Treatment System" shall mean a treatment system that shall be

implemented pursuant to an EPA approved Final Treatment System Design;

       p.    "Final Treatment System Design" shall mean the completion of detailed plans and

specifications at the 100 percent stage of completion as needed to begin treatment system

construction.  The Design shall include an explanation of when treatment optimization activities

will be completed, vegetated elements of the treatment system will be fully established and when

the system is expected to function and perform as designed, including an account of how these

items will be determined to have been completed;

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

6

q.   "General Permit" shall mean Industrial Stormwater General Permit No. WAR000325 issued to Defendant by the Washington Department of Ecology ("Ecology") under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), including the current permit or such permits that succeed the current permit issued and in effect at the relevant time under this Consent Decree;

r.   "Month" shall mean a calendar month.  If it's a date of a submission, that submission shall be due the last Day of that Month;

s.   "Outfall" shall mean the numbered discharge points identified in Defendant's Stormwater Pollution Prevention Plan ("SWPPP");

t.   "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral;

u.   "Parties" shall mean the United States and Defendant;

v.   "Section" shall mean a portion of this Consent Decree identified by a Roman numeral;

w.   "State" shall mean the State of Washington;

x.   "Stormwater Management System" shall mean a set of practices for bringing stormwater management into full General Permit compliance, including but not limited to operational and structural source controls and treatment;

y.   "Sufficient Flow"  shall mean release of flow from the storm drain system to the receiving water at a point designated for this function, in sufficient quantity to collect samples adequate for analysis of the specified water quality constituents, using the sampling methods specified in the General Permit and the SWPPP for the Facility;

z.   "Treatment Facility Completion" shall mean the point in time when all

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1  construction, start-up, and optimization activities of a treatment system have been completed,

2  vegetated elements of the treatment system are fully established, and the system is in operation

3  and is expected to function and perform as designed so stormwater runoff is treated at the

4  applicable design flow rate;

5        aa.  "Unauthorized Discharge" shall mean a discharge of pollutants from the Facility

6  to a navigable water in any location or from any point source other than the discharge points

7  identified in the Facility's SWPPP;

8        bb.  "United States" shall mean the United States of America, acting on behalf of

9  EPA.

10  **V.   CIVIL PENALTY**

11  9.     Within thirty (30) Days after the Effective Date, Defendant shall pay the sum of

12  $320,000 as a civil penalty, together with interest accruing from the date on which the Consent

13  Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the Date of

14  Lodging.

15  10.    Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer

16  ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to

17  Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for

18  the Western District of Washington after the Effective Date.  The payment instructions provided

19  by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which

20  Defendant shall use to identify all payments required to be made in accordance with this Consent

21  Decree.  The FLU will provide the payment instructions on behalf of Defendant to:

22

23

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

Randy Jordan
Controller
Manke Lumber Company, Inc.
1717 Marine View Drive
Tacoma, WA  98422
253-572-6252
randy@mankelumbercompany.com

11.     Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XV (Notices) below.

At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail to EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XV below; and (iii) to EPA in accordance with Section XV.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United Sates v. Manke Lumber Company, Inc. and shall reference the civil action number 3:17-cv-05257-RJB, CDCS Number and DOJ case number 90-5-1-1-11580.

12.     Defendant shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section IX (Stipulated Penalties) below in calculating its federal income tax.

## VI.   COMPLIANCE REQUIREMENTS

13.     Defendant shall comply with CWA § 301, 33 U.S.C. § 1311; the conditions and limitations of the General Permit issued to Defendant by Ecology under Section 402(a) of the CWA, 33 U.S.C. § 1342(a); and the Spill Prevention, Control, and Countermeasure regulations promulgated by EPA pursuant to Section 311(j) of the CWA, 33 U.S.C. § 1321(j).

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

## A.  Environmental Manager and Engineering Consulting Firm

14.     Environmental Manager.  Defendant has hired an Environmental Manager.  Defendant has certified in writing to EPA that the Environmental Manager meets, at a minimum, the following criteria:

a.     At least a bachelor's degree in environmental science or environmental engineering, or a field closely related to environmental science or environmental engineering;

b.     At least five (5) years of experience working in environmental compliance, including compliance activities, at a minimum, related to the CWA § 301, 33 U.S.C. § 1311, the conditions and limitations of the General Permit issued to the Defendant by Ecology under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), and the Spill Prevention, Control, and Countermeasure regulations promulgated by EPA pursuant to Section 311(j) of the CWA, 33 U.S.C. § 1321(j).

c.     At least two (2) years of experience as a team leader in an environmental field, and in managing complex environmental projects similar in scope to the needs at Defendant's Facility; and

d.     Professional training, certification and credentials required to manage and direct an environmental program at the Facility, or have the ability to complete such requirements within the first 30 Days of employment with Defendant.

15.     The Environmental Manager shall be responsible for coordinating compliance with applicable federal, state or local environmental regulations, and at a minimum, must meet the following requirements:

a.     Be a full-time, permanent employee of Defendant;

b.     Have direct reporting responsibility to appropriate Facility personnel possessing

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1    the authority and responsibility to manage all activities, including required operation and

2    maintenance activities at the Facility, necessary to meet applicable federal, state, or local

3    environmental regulations at the Facility, including those activities performed by contractors and

4    subcontractors;

5            c.    Have direct reporting responsibility to appropriate Facility personnel possessing

6    the authority to order any person, including contractors and subcontractors, to stop work at the

7    Facility to ensure compliance with applicable federal, state, or local environmental regulations

8    and to order such other actions as necessary to comply with applicable federal, state or local

9    environmental regulations;

10           d.    Coordinate the securing of all permits and plans required to comply with

11   applicable federal, state or local environmental regulations;

12           e.    Oversee and assist the Defendant's EMS Consultant in developing the EMS and

13   EMS Manual required by Paragraph 42 and oversee implementation of the EMS and EMS

14   Manual;

15           f.    Assist the Defendant's Engineering Consulting Firm in analyzing and improving

16   the Facility's Stormwater Management System;

17           g.    Oversee development and implementation of Defendant's environmental training

18   programs as described in Paragraphs 57 - 59 and the EMS Manual; and

19           h.    Coordinate with the Auditor in the following ways:  (i) Coordinate with Auditor

20   on timing of Audit; (ii) allow and assist with access to relevant company policies and

21   procedures; (iii) allow and assist with access to company operations during normal business

22   hours; (iv) allow and assist with access to and scheduling of any employees Auditor would like

23   to interview; (v) allow access to any areas of the Facility where the Auditor needs to perform

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

tests or take samples; and (vi) work with appropriate employees and contractors to address deficiencies found during the Audit.

16.     Process for Replacing Environmental Manager.  If, for any reason, the Defendant needs to replace its Environmental Manager during the term of this Consent Decree, Defendant shall use best efforts to hire a new Environmental Manager within sixty (60) Days of the prior Environmental Manager's departure.  Defendant shall certify in writing to EPA within ten (10) Days after hiring, that the new Environmental Manager meets, at a minimum, the criteria in Paragraphs 14 and 15 above.  If Defendant has not hired a new Environmental Manager within sixty (60) Days, Defendant shall explain in writing to EPA what efforts it has undertaken and propose a new schedule.

17.     Engineering Consulting Firm.  Defendant has retained, and EPA has approved, Kennedy/Jenks Consultants, Inc. (Kennedy/Jenks) as the Engineering Consulting Firm to analyze and improve the Facility's Stormwater Management System, and EPA finds that Kennedy/Jenks meets the minimum criteria set forth in Paragraph 18.

18.     Engineering Consulting Firm Qualifications and Process for Replacement.  In the event that the Environmental Consulting Firm is no longer available, terminated or willing to accept the work described in Paragraphs 20 - 33, Defendant shall submit to EPA for approval, within 30 Days from the notice of termination from either Defendant or the Engineering Consulting Firm, a list of two or more proposed consultants to serve as the Replacement Engineering Consulting Firm.  The Engineering Consulting Firms proposed by Defendant shall meet the following minimum criteria:

a.     At least five (5) years of experience advising multiple industries regarding compliance with and obligations under the Washington Industrial Stormwater General Permit,

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

12

1   including wood products companies and industries of Defendant's approximate scale (the

2   Facility covers approximately 35 acres, vehicle traffic consists of approximately 50 - 60 log

3   trucks and approximately 50 - 60 lumber trucks per day);

4          b.   At least five (5) years of experience applying Ecology's  Stormwater

5   Management Manual for Western Washington;

6          c.   First-hand direct experience in the selection, design, installation, operation and

7   maintenance, and performance of stormwater treatment systems;

8          d.   Experience in designing and implementing auxiliary equipment and facility

9   infrastructure improvements needed for stormwater treatment systems (*e.g.*, conveyance

10   equipment and providing for convenient sample collection locations); and

11          e.   Expertise in using the Western Washington Hydrology Model or other continuous

12   simulation hydrologic models approved by Ecology for determining the water quality flowrates

13   required in the Ecology's Stormwater Management Manual for Western Washington

14   ("SWMMWW") as a basis for treatment system sizing and design.

15   19.    At the time Defendant provides the names of proposed Replacement Engineering

16   Consultant Firms to EPA, it shall also provide (i) the name, affiliation, and address of the

17   proposed consultants; (ii) information demonstrating how each proposed replacement consultant

18   meets the criteria found above in Paragraph 18, and (iii) descriptions of any previous work

19   contracts, or financial relationships with Defendant, if any.  Within fourteen (14) Days of

20   receiving the list of proposed consultants, EPA shall provide written notice to Defendant whether

21   it approves of any replacement consultant(s) on the list.  If EPA does not approve any of the

22   proposed replacement consultants on Defendant's list, then Defendant shall submit another list of

23   at least two proposed consultants to EPA within ten (10) Days of receipt of EPA's written notice.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1  Within ten (10) Days after receipt of EPA's approval, Defendant shall enter into a contract with

2  an EPA-approved consultant to perform all duties described in Paragraphs 20 - 33 below.

3  **B.  Stormwater Compliance Requirements**

4  20.    <u>Stormwater and Process Water Management</u>.  Defendant shall be responsible with the

5  assistance of the Engineering Consulting Firm for analyzing its entire Stormwater Management

6  System (including elimination and/or prevention of comingling of stormwater with spills and

7  process water), making recommendations for bringing stormwater management into full General

8  Permit compliance, and designing and implementing improvements for permitted discharge

9  points, including Outfalls 001, 004, 005 and 006, described in more detail in Paragraphs 21 - 34

10  below.

11  21.    <u>Storm Water Treatment for Outfalls 001 and 006</u>.  Defendant shall implement a

12  stormwater treatment system based on the biofiltration technology installed at the Port of

13  Tacoma (Port) at the West Hylebos Pier (WHP) located at 3401 Taylor Way, Tacoma, WA, in

14  accordance with the following requirements:

15  a.    Stormwater treatment will focus on reduction of the pollutants which Defendant is

16  responsible for monitoring under the General Permit so they are reasonably expected to meet the

17  Benchmarks set forth in the General Permit;

18  b.    The design basis for the treatment system(s) shall be consistent with the Ecology-

19  approved approach applied at the Port's WHP, meeting treatment flow requirements defined in

20  Chapter 4 of Volume V of the SWMMWW and in accordance with SWMMWW, Section I-2.5.6,

21  Minimum Requirement #6:  Runoff Treatment (page 2-33);

22  c.    <u>Conceptual Treatment System Designs for Outfall 001 and 006</u>.  The Conceptual

23  Treatment System Designs for 001 and 006 have both been approved by EPA and are attached as

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

14

Appendix A.  Two Technical Memoranda dated March 30, 2018 and August 10, 2018 that provide a narrative description and technical support for biofiltration stormwater treatment, including performance data from Port of Tacoma and Port of Vancouver, are also included in Appendix A.

        d.   <u>Final Treatment System Designs for Outfalls 001 and 006.</u>  Defendant submitted to EPA for its approval and EPA approved the Final Treatment System Design for Outfall 001 on February 15, 2019 included in Appendix A.

        e.   Defendant submitted to EPA for its approval and EPA approved the Final Treatment System Design for Outfall 006 on January 4, 2019 included in Appendix A.

        f.   Not later than September 30, 2019, Defendant shall attain Treatment Facility Completion of the Final Treatment System for Outfalls 001 and 006 in accordance with Appendix A.

     22.   <u>Post-Treatment Facility Completion Monitoring at Outfalls 001 and 006.</u>  For the first two years after Treatment Facility Completion at Outfalls 001 and 006, Defendant shall collect at least three samples from each Outfall (in accordance with General Permit Section S4 – General Sampling Requirements) during the first, second, and fourth Calendar Quarters of the year, and at least two samples during the third Calendar Quarter, if Sufficient Flow occurs, or at least one sample if there is Sufficient Flow for only one sample.

        a.   If there have been no Benchmark Exceedances at an Outfall subject to this Paragraph during the first two years after Treatment Facility Completion, Defendant may revert at that Outfall to the General Permit's Section S4 monitoring requirement for that Outfall.

        b.   If there have been any Benchmark Exceedances at an Outfall subject to this Paragraph during the first two years after Treatment Facility Completion, Defendant shall

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

continue to collect samples at that Outfall for a third year at the same intervals identified in this Paragraph.

23.   <u>Evaluation and Modification of Final Treatment System at Outfall 001 and/or Outfall 006 during the Second Year of Monitoring</u>.  If any Benchmark Exceedances, as described in the preceding paragraph, occur during the second year of monitoring after Treatment Facility Completion at an Outfall subject to Paragraph 22, Defendant shall conduct an assessment, in consultation with the Engineering Consulting Firm, to determine the potential design or operational reasons for the exceedances.  Defendant shall complete the assessment within twenty-five (25) Months after Treatment Facility Completion, and shall notify EPA of the date when such assessment is completed.  Within thirty (30) Days of completion of the assessment, Defendant shall submit for EPA approval an assessment report detailing the assessment's methods, results, and conclusions, and outlining the design, reconstruction, operational, and/or maintenance improvements or adjustments to the treatment system, and/or changes to the operational and structural BMPs and SWPPP expected to increase the level of performance sufficiently to meet Benchmarks.  Within ninety (90) Days of approval by EPA, Defendant shall fully implement the approved improvements to the Final Treatment System.  If significant construction or permitting is required, Defendant may request an extension to the schedule in the assessment report.

24.   <u>Third Year of Monitoring After Treatment Facility Completion at Outfall 001 and/or Outfall 006</u>.

a.   <u>Two Exceedances</u>.  If the average of quarterly sampling results, for any single parameter, exceed Benchmarks at any Outfall subject to this Paragraph two times during the third year of monitoring after Treatment Facility Completion, Defendant shall conduct an

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

16

1    assessment, in consultation with its Engineering Consulting Firm, to evaluate the treatment

2    system's performance trend over the prior three years.  The assessment's objective shall be to

3    determine whether adjustments can be made sufficient to meet all Benchmarks.  Defendant shall

4    complete the assessment within thirty-seven (37) Months after Treatment Facility Completion,

5    and shall notify EPA of the date when such assessment is completed.  Within thirty (30) Days of

6    completion of the assessment, Defendant shall submit for EPA approval an assessment report

7    containing the assessment's methods, results, and conclusions, and outlining the design,

8    reconstruction, operational, and/or maintenance improvements or adjustments to the treatment

9    system, and/or changes to the operational and structural BMPs and SWPPP expected to increase

10   the level of performance sufficiently to meet Benchmarks, as well as address whether further

11   monitoring above the General Permit requirements should be conducted or revert to General

12   Permit requirements.  If EPA approves Defendant's proposal, Defendant shall fully implement

13   the approved adjustments to the Final Treatment System within ninety (90) Days of EPA

14   approval.  If significant construction or permitting is required, Defendant may request an

15   extension to the schedule in the assessment report.  If EPA determines that the Treatment System

16   will not meet Benchmarks consistently, Defendant shall commission the process described in

17   Paragraph 25 below to replace the Outfall 001 and/or 006 Treatment System or seek an

18   individual NPDES permit from the State described in Paragraph 26.  If there have been no

19   Benchmark Exceedances at an Outfall subject to Paragraph 22 during the third year after

20   Treatment Facility Completion, Defendant may revert at that Outfall to the General Permit's

21   Section S4 monitoring requirement for that Outfall.

22          b.    Three or More Exceedances.  If the average of quarterly sampling results, for any

23   single parameter, exceed Benchmarks at any Outfall subject to this Paragraph three or more

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

17

1  times during the third year of monitoring after Treatment Facility Completion, Defendant shall

2  initiate the process outlined in Paragraph 25, including, in consultation with its Engineering

3  Consulting Firm, evaluation of active treatment systems based on chemical and electrical

4  coagulation technologies or seek an individual NPDES permit from the State described in

5  Paragraph 26.

6    25.   Process for Replacement of Final Treatment System for Outfall 001 and/or Outfall 006

7  in Third Year.  If the process outlined in Paragraphs 21 - 24 above does not result in a Final

8  Treatment System that consistently meets Benchmarks under the General Permit, then Defendant

9  shall evaluate, in consultation with its Engineering Consulting Firm, active treatment systems,

10 based on chemical coagulation and/or electrocoagulation technologies.  Defendant shall engage a

11 consultant with at least five years of experience with those treatment systems to select and

12 implement a replacement treatment system.  EPA will provide a statement of minimum

13 qualifications of such consultant within thirty (30) Days of the determination by EPA that

14 biofiltration technology will not consistently meet Benchmarks, pursuant to Paragraph 24 above,

15 which Defendant shall incorporate in the request for qualifications to hire the consultant.

16    a.   Conceptual Treatment System Design Replacement for Outfall 001 and/or 006.

17 Within ninety (90) Days of the determination by EPA that the biofiltration technology will not

18 meet Benchmarks, pursuant to Paragraph 24 Defendant shall submit a Conceptual Treatment

19 System Replacement Design to EPA for review and approval.

20    b.   Within ninety (90) Days of EPA approval of the Conceptual Treatment System

21 Replacement Design, Defendant shall complete the Final Treatment Replacement System

22 Design.  Defendant shall submit the Final Treatment System Replacement Design to EPA for

23 review and approval.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

c.      Within one hundred eighty (180) Days of EPA approval of the Final Treatment System Replacement Design, Defendant shall complete installation of the Final Treatment System Replacement.

26.      Defendant may choose to seek an individual NPDES permit from the State, rather than take the corrective action outlined in Paragraph 25.  If Defendant submits a permit application, no corrective action will be required under Paragraph 25; however, stipulated penalties as outlined in Paragraph 91 will apply.  If the permit application is denied or withdrawn, Defendant shall be required to commence the process outlined in Paragraph 25, beginning with submission of a Conceptual Treatment System Replacement Design to EPA for review and approval within ninety (90) Days of the withdrawal or denial of the permit application.  The stipulated penalties as outlined in Paragraph 92 will apply.

27.      <u>Additional Storm Water Treatment at Outfall 004</u>.  Defendant has made the following changes at Outfall 004: (1) Installed an eight (8) foot wide by eight (8) inch tall grass strip between the yard and the swale; (2) Installed straw wattles between the yard the grass strip; (3) Installed gator guard between the grass strip and the swale; (4) Removed all unnecessary equipment that has been stored in the area; and (5) Completed hydro seeding of the steep slope behind the swale; and (6) Covered any remaining bare spots with bonded fiber matrix or erosion control material of equivalent effectiveness and shall maintain it in a fully intact condition until vegetative coverage is achieved.  Defendant shall monitor at Outfall 004 in accordance with General Permit Section S4 – General Sampling Requirements.

28.      <u>Additional Stormwater Management System Actions at Outfall 005</u>.

a.      Defendant has completed the following improvements at Outfall 005: (1) Paved gravel area adjacent to swale; (3) Installed grass strip between pavement and swale; (4) Placed

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

straw wattles between pavement and grass strip; (5) Cleaned out bioswale and removed debris; (6) Completed hydro seeding of the steep slope behind the swale; and (7) Removed hog fuel and pallet materials.

b.    Defendant shall:  (1) Continue to operate and maintain the bioswale system upgrades implemented in 2017-2018 as set forth in subparagraph a, above; (2) Address sources from the hillside and elsewhere outside the industrial area to reduce sediments entering the 005 swale; (3) Hydraulically isolate the sawdust pile and its immediate surroundings from the remainder of the 005 drainage contributing area; (4) Collect runoff from the isolated area: (5) Drain collected runoff into the City of Tacoma sanitary sewer system; and  (6) Institute an enhanced vacuum sweeping program for the remainder of the 005 drainage contributing area, with sweeping to occur daily.

29.    <u>Stormwater Management System Monitoring at Outfall 005</u>.  For the first year after Stormwater Management System Completion at Outfall 005, Defendant shall collect at least two (2) samples from the Outfall (in accordance with General Permit Section S4 – General Sampling Requirements) during the first, second, and fourth Calendar Quarters of the year, and at least two samples during the third Calendar Quarter, if Sufficient Flow occurs, or at least one (1) sample if there is Sufficient Flow for only one sample.

a.    If there have been no Benchmark Exceedances at the Outfall during the first year after completion of the Stormwater Management Systems at Outfall 005, Defendant may revert to the General Permit's Section S4 monitoring requirement.

b.    If there have been any Benchmark Exceedances at the Outfall during the first year after completion of Stormwater Management Systems, Defendant shall continue to collect samples for a second year at the same intervals identified in Paragraph 29.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

20

30. <u>Second Year of Monitoring After Completion of Stormwater Management System for Outfall 005</u>.

a. <u>No Exceedances</u>.  If there have been no Benchmark Exceedances at Outfall 005 during the second year following completion of the above actions, Defendant may revert to the General Permit's Section S4 monitoring requirements.

b. <u>Two Exceedances</u>. If the average of quarterly sampling results, for any single parameter, exceed Benchmarks at the outfall two (2) times during the second year of monitoring after completion of Stormwater Management Systems identified in Paragraph 28 above, Defendant shall conduct an assessment, in consultation with its Engineering Consulting Firm, to evaluate the treatment system's performance trend over the prior two (2) years.  The assessment's objective shall be to determine whether adjustments can be made sufficient to meet all Benchmarks.  Defendant shall complete the assessment twenty-five (25) Months after completion of the Stormwater Management Systems identified in Paragraph 28 above and shall notify EPA of the date when such assessment is completed.  Within thirty (30) Days of completion of the assessment, Defendant shall submit for EPA approval an assessment report detailing the assessment's methods, results, and conclusions, and outlining the design, reconstruction, operational, and/or maintenance improvements or adjustments to the Stormwater Management Systems at 005 and SWPPP, including implementation of stormwater treatment, expected to increase the level of performance sufficiently to meet Benchmarks, as well as address whether further monitoring above the General Permit requirements should be conducted or revert to General Permit requirements. If EPA approves Defendant's assessment report, Defendant shall fully implement the approved adjustments to the Stormwater Management System for Outfall 005 within ninety (90) Days of EPA approval.   If significant construction or

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

21

1    permitting is required, Defendant may request an extension to the schedule in the assessment

2    report.

3                c.    After reviewing the assessment described in the previous paragraph, if EPA

4    determines that the proposed Stormwater Management Systems at Outfall 005 will not meet

5    Benchmarks consistently, Defendant shall initiate for Outfall 005 the process set forth for

6    Outfalls 001 and 006 in Paragraphs 21 - 26 in consultation with its Engineering Consulting Firm

7    under the following schedule:

8            (1)    Conceptual Design or Individual NPDES submitted within ninety (90)
9                   Days of the determination by EPA the system will not meet Benchmarks;

10           (2)    Final Treatment Design submitted within ninety (90) Days of EPA
11                  approval of the Conceptual Design;

12           (3)    Final Treatment Completion within one hundred eighty (180) Days of
13                  EPA Approval of the Final Treatment Design.

14   Defendant shall evaluate active treatment systems, based on biofiltration and/or chemical

15   coagulation and electrocoagulation technologies for Outfall 005, or seek an individual NPDES

16   permit from the State as described in Paragraph 26.

17               d.    Three or More Exceedances.  If the average of quarterly sampling results, for any

18   single parameter, exceed Benchmarks at the Outfall three (3) or more times during the second

19   year of monitoring after completion of Stormwater Management Systems at Outfall 005, but in

20   no event later than December 31, 2020, Defendant shall initiate for Outfall 005 the process set

21   forth for Outfalls 001 and 006 in Paragraphs 21- 26 in consultation with its Engineering

22   Consulting Firm, under the schedule outlined in Paragraph 30(c).  Defendant shall evaluate

23   active treatment systems based on biofiltration and/or chemical coagulation and

24   electrocoagulation technologies for Outfall 005, or seek an individual NPDES permit from the

25   State described in Paragraph 26.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

22

31.   <u>Operation and Maintenance for Storm and Process Water Treatment</u>.  Defendant shall operate and maintain all treatment system upgrades.

32.   <u>Operation and Maintenance Manuals for All Outfalls</u>.  Within ninety (90) Days from the Effective Date, Defendant shall submit for EPA's review and approval comprehensive Operation and Maintenance (O&M) Manuals for Outfalls 004 and 005.  Defendant shall submit O&M Manuals for EPA's review and approval for Outfalls 001 and 006 Stormwater Management Systems within ninety (90) Days from Treatment Facility Completion, but in no event later than December 31, 2019.

a.   Defendant shall implement and enforce the Manuals' provisions for each Outfall immediately upon approval.

b.   Defendant shall update and revise the Operation and Maintenance Manuals for each Outfall when there are any substantive modifications to any aspect of the stormwater management and treatment systems relevant to operations and maintenance of the outfall, including but not necessarily limited to operational and structural source controls and treatment system designs, structural configurations, and operation and maintenance procedures.  Defendant shall submit revised Operation and Maintenance Manuals, as part of reporting as in Section VIII to the EPA for review, at least annually, or within fourteen (14) Days of request by EPA.  EPA may provide written comments and recommendations to Defendant.  If EPA provides substantive comments, Defendant shall provide a written response to such comments within fourteen (14) Days of receipt.

33.   <u>Operation and Maintenance Training</u>.  Within ninety (90) Days of EPA's approval of the Operation and Maintenance Manuals for each Outfall, Defendant shall train all employees having any contact with the Stormwater Management System associated with the Outfall in

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

23

accordance with the manual's requirements and procedures.  Defendant shall similarly train all new employees having any contact with the Stormwater Management Systems within one month of their hire.  Defendant shall provide annual refresher training to all employees and document the training in accordance with General Permit requirements.  Defendant shall provide training records and any materials used in training, in addition to the Operation and Maintenance Manuals, to the EPA as part of ongoing reporting obligations under Section VIII.

34.     Defendant shall regularly revise SWPPP, as specified by the General Permit.  Within 90 Days of the Effective Date, Defendant shall submit its initial revised SWPPP to EPA for review and approval.  Defendant shall submit to EPA any substantive modification to any aspect of the stormwater management program after the initial revised SWPPP is approved by EPA, as part of ongoing reporting obligations under Section VIII below.

35.     Approval of Deliverables.  After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

36.     If the submission is approved pursuant to Paragraph 35 above, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part pursuant to Paragraph 35(b) or (c), Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section XI (Dispute Resolution) below.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

37.     If the submission is disapproved in whole or in part pursuant to Paragraph 35(c) or (d), Defendant shall, within forty-five (45) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

38.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution pursuant to Section XI and the right of EPA to seek stipulated penalties as provided in the Section IX.

39.     Any stipulated penalties applicable to the original submission, as provided in Section IX, shall accrue during the forty-five (45) day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Consent Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

40.     If a submission is for a list of consultants, auditors, or an Environmental Manager under Paragraphs 16, 18, 19, 43, 48, and 49 and EPA disapproves of everyone on the list, Defendant may request a meeting with EPA regarding the reason(s) for disapproval prior to submitting a new list.

41.     Permits.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

25

Defendant may seek relief under the provisions of Section X (Force Majeure) below for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## C.  EMS and Multimedia Environmental Audits

42.     <u>Environmental Management System</u>.  Defendant has retained and EPA has approved Kennedy/Jenks ("EMS Consultant") to develop an integrated EMS for the Facility.  Defendant shall bear all costs associated with the EMS Consultant, cooperate fully with the EMS Consultant, and provide the EMS Consultant with access to the Facility, records, and employees that the EMS Consultant deems reasonably necessary to effectively perform the duties described in Paragraph 44.  Defendant shall implement the EMS through the application of the EMS Manual. EPA has agreed to maintain a copy of Defendant's EMS and EMS Manual during the term of the CD.

43.     <u>Process for Replacing EMS Consultant</u>.  In the event that the EMS Consultant is no longer available or willing to accept the work described in Paragraphs 44-45 below, Defendant shall submit to EPA for its approval, within sixty (60) Days of the Effective Date, a list of two or more proposed replacement EMS consultants to serve as the EMS Consultant, along with (a) the name, affiliation, and address of the proposed consultants; (b) information demonstrating how each proposed consultant is qualified to perform the work required in Paragraphs 42, 44, and 45; and (c) descriptions of any previous work contracts, or financial relationships with Defendant, if any.  Within fourteen (14) Days of receiving the list of proposed consultants, EPA shall notify Defendant whether it approves of any consultant(s) on the list.  If EPA does not approve any of

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

26

the proposed consultants on Defendant's list, then Defendant shall submit another list of proposed consultants to EPA within ten (10) Days of receipt of EPA's written notice.  Within ten (10) Days after receipt of EPA's approval, Defendant shall enter into the contract with one of the EPA-approved consultants to perform all duties described in Paragraphs 44 - 45 below.

44.    Implementation of the EMS.  Defendant submitted and EPA approved the EMS and EMS Manual on October 3, 2018. Within fourteen (14) Days of EPA approval, Defendant shall commence implementation of the EPA approved EMS in accordance with the approved EMS Manual.

45.    Revisions of the EMS Manual.  In accordance with Paragraph 71 Defendant shall submit any substantive revisions to the EMS manual to EPA for its approval as part of its Semi-Annual and Annual Reports.

46.    Multi-Media Environmental and EMS Audits.  As outlined in Paragraph 48, Defendant shall retain a Third Party Auditor (Auditor), to conduct multi-media environmental and internal EMS Audits annually at the Facility.  The Auditor must have the qualifications set forth in Paragraph 47.  The first Audit shall be performed no later than six (6) Months following the Effective Date; thereafter, three (3) more Audits shall be conducted annually.  Audits under this Paragraph shall comply with the EMS, the EMS Manual, and with the following statutes: Clean Air Act ("CAA"), Clean Water Act ("CWA"), (including stormwater requirements), Emergency Planning and Community Right-to-Know Act ("EPCRA"), and Resource Conservation and Recovery Act ("RCRA").

47.    Qualifications of Third Party Environmental Auditor and Conditions for Employment. The Auditor hired to perform the multi-media environmental and internal EMS Audits required by Paragraph 46 above must have at least five (5) years of experience with the requirements of

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

27

the CAA, CWA, EPCRA, and RCRA, and agree to following the conditions: 1) If selected, Auditor cannot provide any other commercial, business, or voluntary services to Manke for a period of  least two (2) years following the Auditor's submittal of its final Audit Report; 2) Manke shall not provide future employment to Auditor or persons involved in Audit for at least two (2) years following the Auditor's submittal of its final Audit Report; 3) the Auditor and EPA may communicate independently with each other without notice to or including Manke.

48.     Within thirty (30) Days of the Effective Date, Defendant shall submit to the United States for approval, a list of three (3) or more proposed candidates to serve as the Auditor along with (a) the name, affiliation, and address of each proposed Auditor; (b) information demonstrating how each proposed Auditor meets the criteria and conditions found in Paragraph 47; and (c) descriptions of any previous work contracts, or financial relationships with Defendant, if any.  Within fourteen (14) Days of receiving the list of proposed Auditors, the United States shall notify Defendant whether it approves of any Auditors on the list.  If the United States does not approve any of the proposed Auditors on Defendant's list, then Defendant shall submit another list of proposed Auditors to the United States within ten (10) Days of receipt of the United States' written notice.  Within ten (10) Days after receipt of EPA's approval, Defendant shall enter into a contract with an approved Auditor to perform all duties described in Paragraphs 46 and 51-56.

49.     Replacement Auditor.  In the event that the approved Auditor is no longer available or willing to accept the work described in Paragraphs 46 and 51 - 56, Defendant shall submit to the United States for approval a list of three (3) or more proposed Replacement Auditors within sixty (60) Days of when Defendant learns that the original Auditor is no longer available or willing to accept work under the Consent Decree.  The list of proposed Replacement Auditors shall include

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

28

the following information: (a) name, affiliation, and address of each proposed Replacement Auditor; (b) information demonstrating how each proposed Replacement Auditor meets the criteria  and conditions found in Paragraph 47 above; and (c) descriptions of any previous work contracts, or financial relationships with Defendant, if any.  Within fourteen (14) Days of receiving the list of proposed Auditors, the United States shall notify Defendant whether it approves of any proposed Replacement Auditors on the list.  If the United States does not approve any of the proposed Auditors on Defendant's list, then Defendant shall submit another list of proposed Auditors to the United States within ten (10) Days of receipt of the United States' written notice.  Within ten (10) Days after receipt of the United States' approval, Defendant shall enter into the contract with an approved Replacement Auditor to perform all duties described in Paragraphs 46 above and 51 - 56 below.

50.     Defendant shall cooperate fully with the Auditor and provide the Auditor with access to the Facility and all records, employees, and contractors that the Auditor deems reasonably necessary to effectively perform the duties described in Paragraphs 46 above and 51 - 56 below.

51.     Audit Plan.  Within sixty (60) Days from when Defendant retains the third party environmental Auditor, the Auditor shall prepare and submit an Audit Plan for review and approval to EPA that will include at least the following information: the process for an audit; scope of audit; process for scheduling and conducting Site visits; which includes a checklist of relevant compliance requirements; procedures for the exchange of any documents and information that the Auditor needs to perform its duties; and any other terms that the Auditor may deem necessary to effectuate its duties.  Any disputes between Defendant and the Auditor with respect to the Audit Plan shall be decided by EPA in its sole discretion.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

29

52.   <u>Audit Certification</u>.   Annually from the date of EMS Manual approval, Defendant's Environmental Manager, hired pursuant to Paragraphs 14 - 16, shall provide a certification of conformance with the approved EMS Manual to Defendant's management and to EPA, and for any noncompliance, shall submit an explanation of the cause of the noncompliance, remedial steps to be taken, and a date for achieving EMS compliance.

53.   <u>Audit Reports</u>.   Within 45 Days following the completion of each Audit required by Paragraph 46, the Auditor shall concurrently submit an Audit Report to EPA and Defendant. Audit Report(s) shall contain: (i) a summary of the audit process, including any obstacles encountered; (ii) a description of any noncompliance or areas of concerns identified during the audit, including the cause of any such violations or areas of concern; (iii) recommendations for resolving any noncompliance, areas of concern, or otherwise achieving compliance; and (iv) a certification that the audits were conducted in accordance with the provisions of this Consent Decree and the information in the Audit Report is true and accurate.

54.   The Audit Report will also evaluate the adequacy of EMS implementation relative to the EMS Manual and the ISO 14001: 2015 standard and identify noncompliance or areas of concern, from top management down, throughout each major organizational unit with responsibilities under the EMS Manual; and any recommendations for resolving any area of concern or otherwise achieving full implementation of the EMS manual.  The Auditor shall determine the following with respect to the EMS:

a.   Whether there is a defined system, subsystem, program, or planned task for the respective EMS element;

b.   To what extent the system, subsystem, program, or task has been implemented, and is being maintained;

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

30

       c.     The adequacy of the Facility's internal self-assessment procedures for programs and tasks composing the EMS;

       d.     Whether Defendant is effectively communicating environmental requirements to affected parts of the organization, or those working on behalf of the organization;

       e.     Whether further improvements should be made to the EMS and EMS manual; and

       f.     Whether there are any deviations from or any noncompliance Defendant's EMS Manual and recommendations for resolving them.

55.     If EPA finds the Audit Report to be deficient in any respect, EPA may provide written comments to Auditor and Defendant within forty-five (45) Days explaining any deficiencies related to how the audit was conducted and/or explained in the report.  The Auditor must provide a written response to EPA comments to EPA and Defendant within forty-five (45) Days of receipt.

56.     <u>Corrective Measures Plan</u>.  Within forty-five (45) Days of receiving the Audit Report from the Auditor, Defendant shall submit to EPA, a Corrective Measures Plan that includes a plan and schedule for implementing any recommendation(s) or correcting any non-compliance, and/or areas of concern identified in the Audit Report.  If Defendant elects not to implement a recommendation, or not to implement a corrective measure for an area of concern noted in the Audit Report, Defendant shall provide a detailed explanation of the reason why it elected not to implement that recommendation or to correct an area of concern.  In the event EPA finds Defendant's Corrective Measures Plan to address the deficiencies is unacceptable, EPA will submit a written opinion to Defendant identifying the objections and advising Defendant of an acceptable means of addressing the deficiencies.  Within thirty (30) Days of receiving any such objections from EPA, Defendant shall provide an updated Corrective Measures Plan to the

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

31

Auditor and EPA which either provides for implementation of an option suggested by EPA or an alternative means and schedule which EPA determines to satisfactorily address its objections.

### D.  Additional Training

57.  <u>General Environmental Awareness Training</u>.  Defendant conducted General Environmental Awareness training for all Facility employees.  Such training shall be conducted by the Environmental Manager specified in Paragraph 14, and be provided annually for all Facility employees.

58.  <u>Specific Environmental Compliance Training</u>.  Defendant must conduct specific regulatory training for employees whose job responsibilities include environmental monitoring or environmental compliance by September 1, 2018.  At a minimum, the training must provide information on the CWA, the conditions and limitations of the General Permit issued to the Defendant by Ecology, and the Spill Prevention, Control, and Countermeasure (SPCC) regulations promulgated by EPA. Such training shall be conducted annually.

59.  All training conducted pursuant to Paragraphs 57 - 58 above shall be documented with the date of training; name, position and qualifications of trainer; a list of attendees; a summary of training topics; and copies of training materials.  Such documents shall be made available to EPA upon request.

### VII.   SUPPLEMENTAL ENVIRONMENTAL PROJECT

60.  Defendant shall implement a Supplemental Environmental Project ("SEP"), in accordance with all provisions of this Paragraph, Paragraph 61, and Appendix B of this Consent Decree.   The Goldsborough Creek is a Tier 1 (highest priority) drainage in WRIA 14 and is of particular importance to the Squaxin Island Tribe due to tribal fishing rights.  The SEP will allow for approximately 38 acres of undeveloped land to be permanently set aside for conservation and

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

32

passive recreational purposes, including 1,500 feet of Goldsborough Creek (one bank), 580 feet of a tributary (both banks) and a wide functional vegetated riparian corridor covering approximately 20 acres.  The main habitat functions provided by the project site are: 1) abundant, good quality spawning habitat for Coho (ESA species of concern) and Chum salmon, and Steelhead (ESA threatened); 2) shade, food and nutrient input from vegetation overhanging the creek; 3) creek flow maintenance and regulation provided by an undeveloped floodplain; and 4) the prevention of pollution in the form of runoff, lawn chemicals and septic effluent from residential development, from entering Goldsborough Creek and ending up in Oakland Bay and Puget Sound.

61.     Defendant is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree. "Satisfactory completion" means completion of steps laid out in Appendix B within sixty (60) Days after entry of this Decree or fifteen (15) Days of approval by EPA of the restrictive covenant, whichever is later.

62.     With regard to the SEP, Defendant certifies the truth and accuracy of each of the following:

a.     all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Defendant in good faith estimates that the cost to implement the SEP, exclusive of costs, is $435,000;

b.     as of the date of executing this Decree, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.     the SEP is not a project that Defendant was planning or intending to construct,

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

33

perform, or implement other than in settlement of the claims resolved in this Decree;

        d.    Defendant has not received and will not receive credit for the SEP in any other enforcement action;

        e.    Defendant will not receive any reimbursement for any portion of the SEP from any other person; and

        f.    (i) Defendant is not a party to any open federal financial assistance transaction that is funding or could fund the same activity as the SEP described in Paragraphs 60 and 61; and (ii) Defendant has inquired of Capitol Land Trust and City of Shelton whether either is a party to an open federal financial assistance transaction that is funding or could fund the same activity as the SEP and has been informed by Capitol Land Trust and City of Shelton that neither is a party to such a transaction.  For purposes of these certifications, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee, or other mechanism for providing federal financial assistance whose performance period has not yet expired.

63.    <u>SEP Completion Report</u>.

        a.    Within thirty (30) Days after the date set for completion of the SEP, Defendant shall submit a SEP Completion Report to the United States, in accordance with Section XV of this Consent Decree (Notices).  The SEP Completion Report shall contain the following information:

        (1)    a detailed description of the SEP as implemented;

        (2)    a description of any problems encountered in completing the SEP and the solutions thereto;

        (3)    an itemized list of all eligible SEP costs expended;

        (4)    certification that the SEP has been fully implemented pursuant to the

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

34

1    provisions of this Decree; and

2     (5)  a description of the environmental and public health benefits resulting
3         from implementation of the SEP (with a quantification of the benefits and
4         pollutant reductions, if feasible).

5

6   64.  EPA may, in its sole discretion, require information in addition to that described in the

7 preceding Paragraph, in order to evaluate Defendant's SEP Completion Report.

8   65.  After receiving the SEP Completion Report, the United States shall notify Defendant

9 whether or not Defendant has satisfactorily completed the SEP.  If Defendant has not completed

10 the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under

11 Section IX of this Consent Decree.

12   66.  Disputes concerning the satisfactory performance of the SEP and the amount of

13 eligible SEP costs may be resolved under Section XI of this Decree (Dispute Resolution).  No

14 other disputes arising under this Section shall be subject to Dispute Resolution.

15   67.  Each submission required under this Section shall be signed by an official with

16 knowledge of the SEP and shall bear the certification language set forth in Paragraph 74.

17   68.  Any public statement, oral or written, in print, film, or other media, made by

18 Defendant making reference to the SEP under this Decree shall include the following language:

19 "This project was undertaken in connection with the settlement of an enforcement action, United

20 States v. Manke Lumber Company, taken on behalf of the U.S. Environmental Protection

21 Agency under the Clean Water Act."

22   69.  For federal income tax purposes, Defendant agrees that it will neither capitalize into

23 inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

24   70.  If Defendant is unable to complete the SEP due to a force majeure event, then

25 Defendant must comply with the requirements of Section X (Force Majeure) and propose a new

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1  SEP of at least the same or greater value within thirty (30) Days of when Manke knew or should

2  have known of the force majeure event.

3  ## VIII.   REPORTING REQUIREMENTS

4  71.   Defendant shall submit the following reports:

5  a.   <u>Semi-Annual Reports</u>.  Defendant shall submit a semi-annual report within eight

6  (8) Months of the Effective Date, with three (3) more reports submitted every six (6) Months.

7  b.   The first semi-annual report shall cover the following information from the Date

8  of Lodging: a summary of Audit findings; any corrective measures recommended by the

9  Auditor; Defendant's response to the Audit findings including a schedule for corrective actions,

10  the status of any construction or compliance measures; problems encountered or anticipated,

11  together with implemented or proposed solutions; status of permit applications; operation and

12  maintenance activities; reports to state agencies; substantive SWPPP updates pursuant to

13  Paragraph 34; summary of Benchmark Exceedances; and any changes in Environmental

14  Manager, Engineering Consultant or EMS Consultant.  A copy of each Audit Report completed

15  during the prior six (6) Months and Corrective Measures Plan shall be included, if not already

16  provided to EPA.

17  c.   The report shall also include a description of any non-compliance with the

18  requirements of this Consent Decree and an explanation of the violation's likely cause and of the

19  remedial steps taken, or to be taken, to prevent or minimize such violations.  If Defendant

20  violates, or has reason to believe that it may violate, any requirement of this Consent Decree,

21  Defendant shall notify the United States of such violation and its likely duration, in writing,

22  within ten working Days of the Day Defendant first becomes aware of the violation, with an

23  explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section X (Force Majeure).

          d.     After the final semi-annual report is submitted under Paragraph 71(a), Defendant shall submit an Annual Report for each year thereafter, until termination of this Consent Decree pursuant to Section XIX (Termination). The first Annual Report shall be submitted within twelve (12) Months of the final Semi-Annual Report under Paragraph 71(a), with the Annual Reports submitted every Twelve Months thereafter.  The Annual Reports shall include all the information included in Paragraphs 71(b) – (c) for the preceding reporting period.

72.     Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than twenty-four (24) hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

73.     All reports shall be submitted to the persons designated in Section XV (Notices).

74.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1  qualified personnel properly gather and evaluate the information submitted.  Based on my

2  inquiry of the person or persons who manage the system, or those persons directly

3  responsible for gathering the information, the information submitted is, to the best of my

4  knowledge and belief, true, accurate, and complete.  I have no personal knowledge that

5  the information submitted is other than true, accurate, and complete.  I am aware that

6  there are significant penalties for submitting false information, including the possibility

7  of fine and imprisonment for knowing violations."

8      75.     This certification requirement does not apply to emergency or similar notifications

9  where compliance would be impractical.

10     76.     The reporting requirements of this Consent Decree do not relieve Defendant of any

11  reporting obligations required by the CWA or implementing regulations, or by any other federal,

12  state, or local law, regulation, permit, or other requirement.

13     77.     Any information provided pursuant to this Consent Decree may be used by the United

14  States in any proceeding to enforce the provisions of this Consent Decree and as otherwise

15  permitted by law.

16                      **IX.    STIPULATED PENALTIES**

17     78.     Defendant shall be liable for stipulated penalties to the United States for violations of

18  this Consent Decree as specified below, unless excused under Section X (Force Majeure).  A

19  violation includes failing to perform any obligation required by the terms of this Decree,

20  including any work plan, manual or schedule approved under this Consent Decree, according to

21  all applicable requirements of this Consent Decree and within the specified time schedules

22  established by or approved under this Consent Decree.

CONSENT DECREE                                                      United States Department of Justice
17CV5257                                                   Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

38

79.   <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $3,000 per Day for each Day that the payment is late.

80.   <u>Non-Compliance with EMS, Engineering Consultant, Third Party Audit and Operation and Maintenance Training Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of requirements in Paragraphs 17-19, 42 -59.

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $ 1,200 | 1st through 30th day |
| $ 3,000 | 31st through 60th day |
| $ 7,000 | 61st day and beyond |

81.   <u>Benchmark Exceedances at Outfalls 001 and 006 During the CD</u>:  The following stipulated penalties shall accrue for each Benchmark Exceedance at Outfalls 001 or 006, if more than one sample is taken in a Calendar Quarter, Defendant may average the results over that Calendar Quarter for purposes of determining whether there was a Benchmark Exceedance:

  a.   Within Second Year after Treatment Facility Completion:

    <u>Penalty per Exceedance Starting with the Second Exceedance</u>
    $ 4,000

  b.   Within Third Year after Treatment Facility Completion:

    <u>Penalty per Exceedance</u>
    $ 6,000

  c.   Within Fourth Year after Treatment Facility Completion and Thereafter:

    <u>Penalty per Exceedance</u>
    $ 20,000

If Defendant has reverted to General Permit monitoring requirements as outlined in Paragraphs 22 - 24, 29 - 30, the penalties in Paragraph 82 will apply and not the penalties in this Paragraph.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

39

82.     <u>Non-Compliance with Required Corrective Actions Following Benchmark</u> <u>Exceedances at Outfall 004 or</u> at Outfalls 001, 005, and/or 006 if General Permit monitoring requirements apply, as outlined in Paragraphs 22 - 24, 29 - 30. The following stipulated penalties shall accrue for each failure to take corrective action within the time frames required in Section S8 of the General Permit in response to any Benchmark Exceedance at Outfalls 004, 001, 005, or 006:

     a.     For a Level 1 Corrective Action required under the General Permit:

          <u>Penalty per Violation per Day</u>
          $5,000

     b.     For a Level 2 Corrective Action required under the General Permit:

          <u>Penalty per Violation per Day</u>
          $15,000

     c.     For a Level 3 Corrective Action required under the General Permit:

          <u>Penalty per Violation per Day</u>
          $25,000

83.     <u>Benchmark Exceedances at Outfalls 005 during the CD</u>.  The following stipulated penalties shall accrue for each Benchmark Exceedance at Outfall 005, if more than one (1) sample is taken in a Calendar Quarter, Defendant may average the results over that Calendar Quarter for purposes of determining whether there was a Benchmark Exceedance:

     a.     Within Second Year after Stormwater Management Completion:

          <u>Penalty per Exceedance Starting with the Second Exceedance</u>
          $ 4,000

     b.     Within Third Year after Stormwater Management Completion:

          <u>Penalty per Exceedance</u>
          $ 6,000

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

40

1          c.      Within Fourth Year after Stormwater Management Completion and Thereafter:

2                  Penalty per Exceedance
3                  $ 20,000

4  If Defendant has reverted to General Permit monitoring requirements as outlined in Paragraph

5  29, the penalties in Paragraph 82 will apply and not the penalties in this Paragraph.

6          84.    <u>Failure to Design, Implement, Modify or Replace Storm Water Treatment for Outfall</u>

7  <u>001 or 006, or 005</u>:  The following stipulated penalties shall accrue per violation per Day for

8  each violation of requirements in Paragraphs 20 - 31:

9          <u>Penalty per Violation per Day</u>          <u>Period of Noncompliance</u>
10         $ 3,000                                         1st through 30th day
11         $ 7,000                                         31st through 60th day
12         $ 15,000                                        61st day and beyond

13
14         85.    <u>Failure to Prepare, Implement or Update the Operation and Maintenance Manual</u>.  The

15  following stipulated penalties shall accrue per Day for each violation of the requirements in

16  Paragraph 32:

17                 <u>Penalty per Violation per Day</u>
18                 $ 750
19

20         86.    <u>Failure to Perform Monitoring at Outfalls at 001, 005 and 006</u>.  The following

21  stipulated penalties shall accrue for each violation of the requirements in Paragraphs 22 and 29:

22                                                   <u>Penalty per violation</u>
23         First two violations                      $ 7,500
24         Third violation and beyond                $ 20,000
25
26         87.    <u>Failure to Provide Operation and Maintenance Training</u>.  The following stipulated

27  penalties shall accrue per violation per Day for each violation of requirements in Paragraph 33:

CONSENT DECREE                          United States Department of Justice
17CV5257                         Environment and Natural Resources Division
                                    P.O. Box 7611, Washington, D.C. 20044-7611

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $ 750 | 1st through 30th day |
| $ 1,500 | 31st through 60th day |
| $ 2,500 | 61st day and beyond |

88.   Reporting Requirements and Failure to Update SWPPP.  The following stipulated

penalties shall accrue per violation per Day for each violation of the reporting requirements of

Paragraphs 34, 63, and 71- 74 above:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $ 750 | 1st through 30th day |
| $ 1,500 | 31st through 60th day |
| $ 2,500 | 61st day and beyond |

89.   Unauthorized Discharges Violations.  The following stipulated penalties shall accrue

per violation per Day for each Unauthorized Discharge from the Facility in violation of

Defendant's General Permit:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $ 5,000 | 1st through 30th day |
| $ 7,500 | 31st through 60th day |
| $ 15,000 | 61st day and beyond |

90.   SEP Compliance.  If Defendant fails to satisfactorily complete the SEP by the

deadlines set forth in Paragraph 61 and Appendix B, Defendant shall pay stipulated penalties for

each day for which it fails to satisfactorily complete the SEP, as follows:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $3000 | 1st through 30th day |
| $5000 | 31st through 60th day |
| $7000 | 61st day and beyond |

91.   If Defendant applies for an Individual NPDES permit in accordance with Paragraph

26, a stipulated penalty of $1,000 per day shall apply commencing when the permit application is

submitted to Ecology and running until the new permit is approved.  Force majeure will not

apply to this Paragraph.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

92.     If the Individual NPDES permit application is withdrawn or denied, a stipulated penalty of $1,000 per day shall apply commencing when the application is withdrawn or denied and running until Treatment Facility Completion is attained for stormwater treatment that is reasonably expected to meet Benchmarks set forth in the General Permit.  Force majeure will not apply to this Paragraph.

93.     <u>Non-compliance with the Consent Decree</u>.  The following stipulated penalties shall accrue per violation per Day for each violation not identified in Paragraphs 79 - 93 above:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $ 750 | 1st through 30th day |
| $ 1,500 | 31st through 60th day |
| $ 2,500 | 61st day and beyond |

94.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

95.     Defendant shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand.

96.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

97.     Stipulated penalties shall continue to accrue as provided in Paragraph 94 above, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) Days of the Effective Date of the

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1    agreement or the receipt of EPA's decision or order.

2           b.    If the dispute is appealed to the Court and the United States prevails in whole or

3    in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together

4    with interest, within sixty (60) Days of receiving the Court's decision or order, except as

5    provided in subparagraph c, below.

6           c.    If any Party appeals the District Court's decision, Defendant shall pay all accrued

7    penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the

8    final appellate court decision.

9    98.    Obligations Prior to the Effective Date.  Upon the Effective Date, the stipulated

10   penalty provisions of this Decree shall be retroactively enforceable to the Date of Lodging with

11   regard to any and all violations that have occurred between the Date of Lodging and the

12   Effective Date, provided that stipulated penalties that may have accrued prior to the Effective

13   Date may not be collected unless and until this Consent Decree is entered by the Court.

14   99.    Defendant shall pay stipulated penalties owing to the United States in the manner set

15   forth and with the confirmation notices required by Paragraph 10 above, except that the

16   transmittal letter shall state that the payment is for stipulated penalties and shall state for which

17   violation(s) the penalties are being paid.

18   100.    If Defendant fails to pay stipulated penalties according to the terms of this Consent

19   Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C.

20   § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be

21   construed to limit the United States from seeking any remedy otherwise provided by law for

22   Defendant's failure to pay any stipulated penalties.

CONSENT DECREE                                    United States Department of Justice
17CV5257                                    Environment and Natural Resources Division
                                             P.O. Box 7611, Washington, D.C. 20044-7611

101.   The payment of penalties and interest, if any, shall not alter in any way Defendant's

obligation to complete the performance of the requirements of this Consent Decree.

102.   <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive

remedy for violations of this Consent Decree.  Subject to the provisions of Section XIII (Effect

of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any

other relief it deems appropriate for Defendant's violation of this Decree or applicable law,

including but not limited to an action against Defendant for statutory penalties, additional

injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any

statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount

equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## X.   FORCE MAJEURE

103.   "Force majeure," for purposes of this Consent Decree, is defined as any event arising

from causes beyond the control of Defendant, of any entity controlled by Defendant, or of

Defendant's contractors that delays or prevents the performance of any obligation under this

Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that

Defendant exercises "best efforts to fulfill the obligation" includes using best efforts to anticipate

any potential force majeure event and best efforts to address the effects of any potential force

majeure event (a) as it is occurring and (b) following the potential force majeure, such that the

delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include

Defendant's financial inability to perform any obligation under this Consent Decree.

104.   If any event occurs or has occurred that may delay the performance of any obligation

under this Consent Decree, whether or not caused by a force majeure event, Defendant shall

provide notice orally or by electronic or facsimile transmission to EPA, within three (3) Days of

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1   when Defendant first knew that the event might cause a delay.  Within seven (7) business Days

2   thereafter, Defendant shall provide in writing to EPA an explanation and description of the

3   reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to

4   prevent or minimize the delay; a schedule for implementation of any measures to be taken to

5   prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such

6   delay to a force majeure event if it intends to assert such a claim; and a statement as to whether,

7   in the opinion of Defendant, such event may cause or contribute to an endangerment to public

8   health, welfare or the environment. Defendant shall include with any notice all available

9   documentation supporting the claim that the delay was attributable to a force majeure.  Failure to

10  comply with the above requirements shall preclude Defendant from asserting any claim of force

11  majeure for that event for the period of time of such failure to comply, and for any additional

12  delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which

13  Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have

14  known.

15      105.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure

16  event, the time for performance of the obligations under this Consent Decree that are affected by

17  the force majeure event will be extended by EPA for such time as is necessary to complete those

18  obligations.  An extension of the time for performance of the obligations affected by the force

19  majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA

20  will notify Defendant in writing of the length of the extension, if any, for performance of the

21  obligations affected by the force majeure event.

22      106.    If EPA does not agree that the delay or anticipated delay has been or will be caused by

23  a force majeure event, EPA will notify Defendant in writing of its decision.

CONSENT DECREE                                                    United States Department of Justice
17CV5257                                                    Environment and Natural Resources Division
                                                              P.O. Box 7611, Washington, D.C. 20044-7611

107.    If Defendant elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution) below, it shall do so no later than fifteen (15) Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 103 and 104 above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI.   DISPUTE RESOLUTION

108.    Unless otherwise expressly provided for in this Consent Decree, any dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

109.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter(s) in dispute.  The period of informal negotiations shall not exceed thirty (30) Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless,

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1    within thirty (30) Days after the conclusion of the informal negotiation period, Defendant

2    invokes formal dispute resolution procedures as set forth below.

3        110.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution

4    procedures, within the time period provided in the preceding Paragraph, by serving on the United

5    States a written Statement of Position regarding the matter in dispute.  The Statement of Position

6    shall include, but need not be limited to, any factual data, analysis, or opinion supporting

7    Defendant's position and any supporting documentation relied upon by Defendant.

8        111.    The United States shall serve its Statement of Position within forty-five (45) Days of

9    receipt of Defendant's Statement of Position.  The United States' Statement of Position shall

10   include, but need not be limited to, any factual data, analysis, or opinion supporting that position

11   and any supporting documentation relied upon by the United States.  The United States'

12   Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial

13   review of the dispute in accordance with the following Paragraph.

14       112.    Defendant may seek judicial review of the dispute by filing with the Court and serving

15   on the United States, in accordance with Section XV (Notices) below, a motion requesting

16   judicial resolution of the dispute.  The motion must be filed within fifteen (15) Days of receipt of

17   the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall

18   contain a written statement of Defendant's position on the matter in dispute, including any

19   supporting factual data, analysis, opinion, or documentation, and shall set forth the relief

20   requested and any schedule within which the dispute must be resolved for orderly

21   implementation of the Consent Decree.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

48

113.    The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

114.    Standard of Review.

a.    <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 110 above pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 110 above, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree better further the Objectives of the Consent Decree.

115.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 97 above.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties) above.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1

2

3       **XII.    INFORMATION COLLECTION AND RETENTION**

4       116.    The United States and its representatives, including attorneys, contractors, and

5  consultants, shall have the right of entry into Defendant's Facility covered by this Consent

6  Decree, at all reasonable times, upon presentation of credentials, to:

7               a.    monitor the progress of activities required under this Consent Decree;

8               b.    verify any data or information submitted to the United States in accordance with

9  the terms of this Consent Decree;

10              c.    obtain samples and, upon request, splits of any samples taken by Defendant or its

11  representatives, contractors, or consultants;

12              d.    obtain documentary evidence, including photographs and similar data; and

13              e.    assess Defendant's compliance with this Consent Decree.

14      117.    Upon request, Defendant shall provide EPA or its authorized representative's splits of

15  any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any

16  samples taken by EPA.

17      118.    Until five (5) years after the termination of this Consent Decree, Defendant shall

18  retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all

19  documents, records, or other information (including documents, records, or other information in

20  electronic form) in its or its contractors' or agents' possession or control, or that come into its or

21  its contractors' or agents' possession or control, and that relate in any manner to Defendant's

22  performance of its obligations under this Consent Decree.  This information-retention

23  requirement shall apply regardless of any contrary corporate or institutional policies or

24  procedures.  At any time during this information-retention period, upon request by the United

CONSENT DECREE                                                     United States Department of Justice
17CV5257                                                          Environment and Natural Resources Division
                                                                    P.O. Box 7611, Washington, D.C. 20044-7611

1  States, Defendant shall provide copies of any non-privileged documents, records, or other

2  information required to be maintained under this Paragraph.

3      119.   At the conclusion of the information-retention period provided in the preceding

4  Paragraph, Defendant shall notify the United States at least ninety (90) Days prior to the

5  destruction of any documents, records, or other information subject to the requirements of the

6  preceding Paragraph and, upon request by the United States, Defendant shall deliver any such

7  documents, records, or other information to EPA.  Defendant may assert that certain documents,

8  records, or other information is privileged under the attorney-client privilege or any other

9  privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the

10  following:  (a) the title of the document, record, or information; (b) the date of the document,

11  record, or information; (c) the name and title of each author of the document, record, or

12  information; (d) the name and title of each addressee and recipient; (e) a description of the

13  subject of the document, record, or information; and (f) the privilege asserted by Defendant.

14  However, no documents, records, or other information created or generated pursuant to the

15  requirements of this Consent Decree shall be withheld on grounds of privilege.

16      120.   Defendant may also assert that information required to be provided under this Section

17  is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any

18  information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set

19  forth in 40 C.F.R. Part 2.

20      121.   This Consent Decree in no way limits or affects any right of entry and inspection, or

21  any right to obtain information, held by the United States pursuant to applicable federal laws,

22  regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

122.   This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

123.   The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal laws, regulations, or permit conditions.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

124.   In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 122 above.

125.   This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations,

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, 33 U.S.C. § 1301, *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

126.   This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

127.   This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV.   COSTS

128.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XV.   NOTICES

129.   Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

53

| | | |
|---|---|---|
| 1 | As to the United States by email: | eescdcopy.enrd@usdoj.gov |
| 2 | | Re: DJ #90-5-1-11580 |
| 3 | | |
| 4 | As to the United States by mail: | EES Case Management Unit |
| 5 | | Environment and Natural Resources Division |
| 6 | | U.S. Department of Justice |
| 7 | | P.O. Box 7611 |
| 8 | | Washington, D.C.  20044-7611 |
| 9 | | Re: DJ # 90-5-1-11580 |

As to EPA:

Allyn Stern
Regional Counsel
U.S. Environmental Protection Agency Region 10
1200 Sixth Ave Ste 155 Mailstop 11-C07
Seattle WA 98122-3123

J. Clarke Thurmon
Attorney-Adviser
Water Law Branch
U.S. Environmental Protection Agency, Region 10
1200 Sixth Ave Ste 155 Mailstop 11-C07
Seattle WA 98122-3123

Edward Kowalski
Division Director
Enforcement & Compliance Assurance Division
U.S. Environmental Protection Agency, Region 10
1200 Sixth Ave Ste 155 Mailstop 20-C04
Seattle WA 98122-3123

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

54

As to Defendant:                        Joel Manke
                                        Manke Lumber Company
                                        1717 Marine View Drive
                                        Tacoma, WA 98422
                                        253-572-6252
                                        joel@mankelumber.com

With a copy to:                         Gregory A. Jacoby
                                        McGavick Graves, P.S.
                                        1102 Broadway, Suite 500
                                        Tacoma, WA  98402
                                        253-627-1181
                                        gaj@mcgavick.com

130.    Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

131.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing,

unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in

writing.

## XVI.   EFFECTIVE DATE

132.    The Effective Date of this Consent Decree shall be the date upon which this Consent

Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever

occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees

that it shall be bound to perform duties scheduled to occur pursuant to Paragraph 98 above.  In

the event the United States withdraws or withholds consent to this Consent Decree before entry,

or the Court declines to enter the Consent Decree, then the preceding requirement to perform

duties scheduled to occur before the Effective Date shall terminate.

CONSENT DECREE                                    United States Department of Justice
17CV5257                                    Environment and Natural Resources Division
                                        P.O. Box 7611, Washington, D.C. 20044-7611

55

## XVII.   RETENTION OF JURISDICTION

133.   The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVIII.   MODIFICATION

134.   The terms of this Consent Decree, including any attached Appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.  Modification to the schedules of less than one year will not be considered a material change, and may be made by written agreement between EPA and Defendant and shall become effective upon agreement of EPA and Defendant.

135.   Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution) above, provided, however, that, instead of the burden of proof provided by Section XI (Dispute Resolution) above, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.   TERMINATION

136.   After the final date that the Defendant has completed all of the requirements of Section VI (Compliance Requirements) above, has thereafter maintained continuous satisfactory compliance with this Consent Decree for a period at least thirty-six (36) consecutive Months, has complied with all other requirements of this Consent Decree and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, and is not in a Level 2 or

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

Level 3 corrective action status under the General Permit, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.  Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

137.    If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section XI above.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until after service of its Request for Termination.

## XX.   PUBLIC PARTICIPATION

138.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

57

1   ## XXI.  SIGNATORIES/SERVICE

2   139.    Each undersigned representative of Defendant and the United States certifies that he or

3   she is fully authorized to enter into the terms and conditions of this Consent Decree and to

4   execute and legally bind the Party he or she represents to this document.

5   140.    This Consent Decree may be signed in counterparts, and its validity shall not be

6   challenged on that basis.  Defendant agrees to accept service of process by mail with respect to

7   all matters arising under or relating to this Consent Decree and to waive the formal service

8   requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any

9   applicable Local Rules of this Court including, but not limited to, service of a summons.

10  ## XXII.  INTEGRATION

11  141.    This Consent Decree constitutes the final, complete, and exclusive agreement and

12  understanding among the Parties with respect to the settlement embodied in the Decree and

13  supersedes all prior agreements and understandings, whether oral or written, concerning the

14  settlement embodied herein.  Other than deliverables that are subsequently submitted and

15  approved pursuant to this Decree, the Parties acknowledge that there are no representations,

16  agreements, or understandings relating to the settlement other than those expressly contained in

17  this Consent Decree.

18  ## XXIII.  FINAL JUDGMENT

19  142.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree

20  shall constitute a final judgment of the Court as to the United States and Defendant.  The Court

21  finds that there is no just reason for delay and therefore enters this judgment as a final judgment

22  under Fed. R. Civ. P. 54 and 58.

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1

## XXIV.   APPENDICES

2      143.   The following Appendices are attached to and part of this Consent Decree:

3
4            "Appendix A" is the Conceptual and Final Designs for Outfalls 001 and 006 and the March 30, 2018 and August 10, 2018 Tech Memos; and

5            "Appendix B" is the SEP Appendix.

6
7

## XXV.   26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

8      144.   For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the

9 Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability),

10 Paragraph 5; Section VI  (Compliance Requirements), Paragraphs 13 -  36, 41 - 59 and related

11 Appendix A; Section VIII (Reporting Requirements), Paragraphs 71, 73 - 75 (except with respect

12 to the SEP); and Section XII (Information Collection and Retention), Paragraphs 116 -119, is

13 restitution or required to come into compliance with law.

14      Dated and entered this 22nd day of January, 2019.

15

16      ROBERT J. BRYAN

17      United States District Judge

18

19

CONSENT DECREE
17CV5257

United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

59

1        FOR THE UNITED STATES OF AMERICA:

2    ___5/17/19_____        ___s/Nathaniel Douglas_____
3    Date                     NATHANIEL DOUGLAS
4                             Deputy Chief
5                             Environment and Natural Resources Division
6                             U.S. Department of Justice
7                             P.O. Box 7611
8                             Washington, DC  20044-7611

9                             ___s/Joanna Citron Day_____
10                            JOANNA CITRON DAY
11                            RACHEL A. HANKEY
12                            Environmental Enforcement Section
13                            Environment and Natural Resources Division
14                            U.S. Department of Justice
15                            P.O. Box 7611
16                            Washington, DC  20044-7611
17                            Phone:  (202)514-3394
18                            Phone:  (415) 744-6471
19                            Email:  joanna.day@usdoj.gov
20                            Email:  rachel.hankey@usdoj.gov

21
22                            BRIAN T. MORAN
23                            United States Attorney

24
25                            BRIAN C. KIPNIS
26                            Assistant United States Attorney
27                            Western District of Washington
28                            5220 United States Courthouse
29                            700 Stewart Street
30                            Seattle, WA 90101-1271
31                            Phone:  (206) 553-7970
32                            Email:  brian.kipnis@usdoj.gov
33
34

CONSENT DECREE                           United States Department of Justice
17CV5257                       Environment and Natural Resources Division
                                 P.O. Box 7611, Washington, D.C. 20044-7611

1                     FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

2    4/18/2019                s/ Allyn Stern

3   Date                    ALLYN STERN

4                         Regional Counsel

5                         U.S. Environmental Protection Agency, Region 10

6                     s/ J. Clarke Thurmon

7                       J. CLARKE THURMON

8                       Attorney-Adviser

9                       Water Law Branch

10                      U.S. Environmental Protection Agency, Region 10

11

12

13

14

15

16

17

18

19

20

21

22

CONSENT DECREE                                           United States Department of Justice
17CV5257                                   Environment and Natural Resources Division
                                         P.O. Box 7611, Washington, D.C. 20044-7611

61

1          FOR MANKE LUMBER COMPANY, INC.:

2    4/25/2019              s/ Charles M. Manke
3    Date                  By: Charles M. Manke
4                          Its: President

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CONSENT DECREE                        United States Department of Justice
17CV5257                        Environment and Natural Resources Division
                                P.O. Box 7611, Washington, D.C. 20044-7611

62